[Civ. No. 631.    Third Appellate District.—November 1, 1909.]

# S. H. FRISBIE, Respondent, v. ROSENBERG BROS. & CO., a Corporation, Appellant.

CONTRACTS—BREACH—SALE OF CROP OF PEARS CURED—TENDER AND RE-
FUSAL—RESALE IN MARKET—RECOVERY OF LOSS.—Where defendant
contracted to purchase the entire crop of pears grown on plaintiff's
land after the pears were cured according to the contract, and after
the same were so cured, the entire crop was tendered to the defend-
ant corporation, which refused to receive any part thereof, the
plaintiff had the right, within a reasonable time, to resell the same
in the market at the place for acceptance at the highest price ob-
tainable, and to recover the loss on such resale, besides loss of
weight from shrinkage, as damages for the breach of the contract.

ID.—SUFFICIENT RESALE—REASONABLE DILIGENCE—COMPLIANCE WITH
STATUTE.—A resale by the seller in the market at the place of de-
livery of the property thirteen days after the property was rejected
by the defendant, for the highest market price then and there ob-
tainable, was a sufficient compliance with section 3353 of the Civil
Code, allowing to the seller in estimating damages "the price which
he could have obtained therefor in the market nearest to the place
where it should have been accepted by the buyer, and at such time
after the breach of the contract as would have sufficed, with reason-
able diligence, for the seller to effect a resale."

ID.—PROFIT OF PURCHASER IN DIFFERENT MARKET IMMATERIAL—IM-
PROPER CROSS-EXAMINATION.—Where the evidence clearly shows the
property was resold at the proper time and place for the highest
price obtainable, the profit made by the purchaser thereof by ship-
ment to another place was immaterial; and questions asked of him
on cross-examination as to where he sold them and what price he
received were properly disallowed.

ID.—SUPPORT OF FINDINGS FOR PLAINTIFF.—*Held,* that the evidence with-
out conflict supports the finding that the plaintiff tendered to the
defendant the entire crop of pears cured which were grown on plain-
tiff's land; and that notwithstanding conflict in the evidence as to
whether the pears inspected and rejected and resold in the market
were up to the standard fixed by the contract, the finding in favor
of the plaintiff on that issue was amply supported by sufficient evi-
dence.

ID.—EXTENT OF SHRINKAGE RECOVERABLE—ALLOWANCE OUTSIDE ISSUES
—DEDUCTION FROM JUDGMENT.—Where the entire crop purchased
was estimated at fifteen tons, and the purchaser obligated himself
to take no more than ten per cent in excess of that quantity, having
a mere option as to the residue of the crop, and the only issue ten-

dered as to shrinkage was on that portion of the crop which the purchaser was obligated to take, any shrinkage allowed by the court on the residue of the crop was outside of the issues, and such allowance may be deducted from the judgment without requiring a new trial.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial. Charles M. Head, Judge.

The facts are stated in the opinion of the court.

A. H. Hewitt, and W. D. Tillotson, for Appellant.

T. W. Shanahan, for Respondent.

BURNETT, J.—The action is for damages for defendant's refusal to comply with its agreement to pay for certain dried fruit sold to it by plaintiff.

On September 4, 1906, the parties entered into a written contract providing that "Rosenberg Bros. & Co. have this day bought of S. H. Frisbie and said seller has this day sold to said buyer the entire crop of pears estimated at fifteen tons now growing and grown on the orchard situate—Anderson— of which orchard ———— is the owner and of which said crop seller declares that he is the owner and represents that he is duly authorized to sell the whole thereof.

"Prices and seller's estimate of quantity as follows, to wit: "About 15 tons Pears @ 8c per lb. . . .

"It is expressly understood and agreed that buyer is not obliged to accept fruit in excess of amount approximated above by more than ten per cent, but may do so at his own option.

"Seller hereby agrees to cure said entire crop properly and to have said entire crop ready for delivery and to deliver the same at Anderson. . . .

"Seller hereby guarantees that all of the fruit hereinabove specified shall be choice, well cured, original condition, and free from damage. . . .

"Buyer hereby agrees to pay for said fruit upon completion of delivery."

Plaintiff claims to have performed all of the conditions required of him by said contract and on October 10th to have

notified defendant that he was ready and desired forthwith to deliver 33,000 pounds of cured pears under said contract. Defendant refused to accept any part of them, and plaintiff held them subject to defendant's order till October 25th. It is alleged "that at said time the said dried pears were losing weight through shrinkage and additional costs of insurance and keeping the same were necessarily being incurred." It is further alleged that plaintiff sold them on October 25th for six cents per pound, the highest market price obtainable, and that he was damaged by defendant's refusal to carry out its contract in the sum of $925. Plaintiff recovered judgment in the sum of $921.

In support of its appeal from the judgment and order denying its motion for a new trial appellant mainly relies upon two grounds: "First, plaintiff did not cure and deliver or offer to deliver his entire crop of pears; and second, the pears that he did offer to deliver were not properly cured."

We are not required, probably, to do more than to say that the findings of the court as to these material matters are amply supported by the evidence, but as appellant appears to be serious in these contentions, and that our declaration may be shown not to be arbitrary, some of the testimony upon each of these points is presented.

1. The plaintiff testified: "Mr. Luyster went with me that day and examined all of those pears before we signed the contract. . . . On the trees in the orchard and the orchard which I had leased there was a little over a hundred tons I am sure, all of which I was the sole owner of. The one hundred and ten tons of pears on the trees, in the boxes and windrows and on the ground were the pears I had in mind and intended to convey under the contract. They were all the pears I owned on that day. I didn't sell a pear of this lot green. I dried every one of them. The amount I secured from that lot—eighteen and one-half tons were what they turned out to be. When the pears were dried I took them to the Earl Fruit Company's packing shed. That is the lot of pears I notified Rosenberg Bros. & Company that I was ready to deliver and make a tender of; and is the same lot I afterward sold to the Sanitary Fruit Company." He is corroborated by Mr. Luyster, who testified that when he entered into the contract he had in mind the entire crop of pears

of Mr. Frisbie. The evidence, indeed, shows without any conflict, that the entire crop purchased was tendered by plaintiff.

2. While there is evidence to the contrary on the part of appellant, yet six witnesses testified for respondent that the pears were up to the standard fixed by the contract. The character of their testimony may be illustrated by the following statement of Earl Downing, an experienced fruitman: "The seventeen tons of cured fruit, the S. H. Frisbie fruit, in the Earl warehouse which was inspected between the twelfth and fifteenth days of October, 1906, I would call properly cured, well cured, choice, in original condition, free from damage, dried pears or cured pears."

There are a few additional considerations inviting brief attention.

As to the contention of appellant that there is no allegation of shrinkage, the portion of the complaint heretofore set out is a sufficient answer, if indeed such an allegation were necessary. Appellant must have forgotten that in its amended answer this language is used: "And it denies that said dried pears were losing weight through shrinkage, or that they did lose weight by shrinkage."

As appellant, on October 12th, refused to accept the pears, it was the duty of respondent to dispose of them in accordance with section 3353 of the Civil Code, providing that "In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale." They were sold at Anderson, the place where they were to be delivered, thirteen days after appellant rejected them, and there is testimony of witnesses that they were sold for the highest price obtainable therefor. Respondent seems thus to have done all that the statute requires as to the disposition of the property.

Appellant complains because the court charged defendant with shrinkage on 36,264 pounds, whereas, under the contract, there was no obligation to accept more than 33,000 pounds. Respondent's answer to this contention is that he "resold the fruit all of which appellant had an option on for the best obtainable price at the nearest market. Appellant would

11 Cal. App.—41

not exercise its option by taking the entire crop, nor would it examine or take the part or any portion of the part it was obligated to take, 33,000 pounds, when the same was ready for delivery. If appellant had accepted the 33,000 pounds on October 12, 1906, and no more, there would have been no shrinkage for which appellant would have been liable, and respondent would have been free of the option on the 'entire crop' and free to dispose of the balance. As it was, respondent was held by appellant for the 'entire crop' none of which it would accept.'' Respondent's argument seems plausible, but there is no allegation in the complaint as to this element of damage, the allegation of shrinkage being confined to the 33,000 pounds. Hence, the finding as to the excess of 3,264 pounds is outside of the issues. Besides, the evidence would hardly justify the conclusion that more than sixteen and one-half tons of the fruit was of good quality. No allowance could properly be made for the shrinkage of this excess which the evidence does not satisfactorily show was of any value. The result is that the judgment should be reduced by the small amount of $23.50. This appears from the finding itself. It is only a matter of simple calculation, and the error does not require a new trial.

The only other point suggested by appellant is that the court erred in sustaining the objection to questions asked on cross-examination of Mr. Stice as to when and where he sold the fruit and what price he received. He purchased the fruit from plaintiff and had testified that six cents per pound was the highest price obtainable at Anderson at that time. If he obtained a higher price at a different place and at a different time it would have no tendency to discredit his testimony as to the price at Anderson. It does appear that he shipped the fruit, but to what point is not disclosed. Since the witness had not been asked in the direct examination as to any subsequent transaction concerning the fruit, appellant, in the absence of any statement as to what was expected to be shown by the questions, cannot complain of the ruling of the court. Indeed, if error was thereby committed by the court it was absolutely without prejudice, in view of the admission of appellant in its brief that ''defendant does not contend that the price for which the pears were so sold was not the full market value of the same.'' If Stice paid

the full market value of the pears, it is, of course, entirely immaterial where he sold them or what price he received.

Twenty-three dollars and fifty cents should be subtracted from the amount of the judgment, leaving a balance of $897.62, and as thus modified the judgment and the order denying the motion for a new trial are affirmed.

Hart, J., and Chipman, P. J., concurred.